W. H. & L. D. BETZ v. UNITED STATES (No. 4154) [1]

[1] C. A. D. 46.

United States Court of Customs and Patent Appeals, March 6, 1939

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) and *Joseph F. Lockett* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney, of counsel), for the United States.

[Oral argument February 8, 1939, by Mr. Tompkins and Mr. Weil]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant made a number of entries at the port of Philadelphia, Pa., of merchandise invoiced as "Norgine F" subject to the provisions of the Tariff Act of 1930. The goods were classified by the collector under paragraph 5 of said act as chemical compounds, and the same were assessed with duty at 25 per centum ad valorem. The importer protested the said classification and assessment of duty by the collector and claimed the merchandise to be, first, free of duty under paragraph 1722, as seaweed, crude or unmanufactured; second, dutiable as seaweed manufactured at 10 per centum ad valorem under paragraph 1540; or third, dutiable at 10 or 20 per centum ad valorem under paragraph 1558 as a nonenumerated unmanufactured or manufactured article.

The United States Customs Court, First Division, one member dissenting, overruled the protests and held the merchandise to be dutiable as assessed, from which judgment appellant has appealed here.

The pertinent statutory provisions of the Tariff Act of 1930 involved are as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

PAR. 1540. Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed, 10 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1722 [Free list]. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

Both sides took considerable testimony. The testimony taken in the case of *W. H. & L. D. Betz* v. *United States*, T. D. 46896, 65 Treas. Dec. 235, which involved the same issues, the same parties, and the same type of merchandise, was incorporated in the instant case.

Concerning the nature, use, and manner of production of the merchandise there is little dispute in the record, but there is considerable controversy between the parties, and conflict in the testimony of the witnesses, concerning the chemical action and lack of chemical reaction involved in the preparation of the merchandise.

"Norgine F" is derived from a natural seaweed which is taken from the bottom of the ocean on the Norwegian coast and there dried in the air, pressed into bales, together with all the adhering impurities, and transported to a factory at Prague, Czechoslovakia. There the seaweed is washed in water and cut into pieces 10 centimeters long. The pieces are then washed in water to which 2 per centum of sulphuric acid and 2 per centum of muriatic acid is added. They are washed in pure water and the acid is neutralized by means of sodium carbonate. The material is then dried and cut into smaller pieces by means of notched rollers.

In substance, it is claimed by the importer that nothing is taken away from the plant except the adhering impurities; that the imported merchandise possesses all the ingredients contained in the original article and therefore is seaweed, manufactured, notwithstanding the change which was brought about by the aforesaid treatment.

It is undisputed that the original seaweed was rich in its content of alginic acid and that as imported, and after treatment, above described, the material contained approximately 50 per centum of sodium alginate. It is the position of the importer that the treatment with sodium carbonate merely neutralized the acid in the seaweed while it is the contention of the Government that the sodium carbonate converted the alginic acid into sodium alginate which was a new chemical compound.

While there is considerable conflict in the testimony of the various witnesses upon technical chemical questions, we think the record fairly shows, as found by the trial court, that the "Norgine F," by the said treatment, lost its physical and chemical identity as seaweed so that the resulting product was an impure sodium alginate, a chemical compound which properly falls under the provisions of said paragraph 5.

The record does not show that any sodium alginate as such existed in the original seaweed. It is not disputed that it exists in the imported product. It is definitely shown in the record that in the imported material is a large percentage of impurities in the form of broken-down cellulose material which was a part of the cellular structure of the seaweed. It seems that appellant's contention resolves itself into an assertion that only pure or substantially pure chemical compounds are covered by the provisions of said paragraph 5. Appellant asserts, and we think the record supports the assertion, that the merchandise, subsequent to importation, is, in this country, further

manufactured so as to produce a purer grade of sodium alginate and that when so purified it is utilized in the preparation of material used for the purification of water.

We do not think it requires extended discussion or citations of authority to support the conclusion that the imported "Norgine F" is neither seaweed in a crude state nor should it be regarded as "seaweeds * * * manufactured," for tariff purposes. To be either it is essential that it still be seaweed. A thing may be manufactured from a thing and not be that thing manufactured. Appellant's counsel, at the time of oral argument, was asked as to the applicability of paragraph 1558. His reply was that if the merchandise was a manufactured article at all it was seaweed, manufactured. This reasoning suggests the line of thought that has led appellant's counsel erroneously to argue that because this product is the result of a manufacturing process, it is seaweed, manufactured. We think if the material at bar was not enumerated in the tariff act, it would properly fall within the nonenumerated manufactured provision of paragraph 1558 not as a manufactured seaweed, although it has been manufactured from seaweed, but as a manufactured article regardless of from what it was manufactured. That paragraph 1540 was not intended to apply to every kind of article that could be manufactured from moss, sea grass, eelgrass, and seaweeds, is evidenced, we think, to some extent by the phrase "if manufactured or dyed." It cannot be said that unless the paragraph should be construed to include everything manufactured *from* the articles named there, there will be nothing for the paragraph to operate upon. Without adopting appellant's construction of the controverted paragraph, we can think of many different kinds of manufacturing operations and treatments of the articles named in the paragraph which would permit them to fall within its *eo nomine* provisions and at the same time be manufactured or dyed.

The trial court, we think, properly relied upon the holding of the Supreme Court of the United States in *Meyer et al.* v. *Arthur*, 91 U. S. 570. There the articles, white lead, nitrate of lead, oxide of zinc, etc., were claimed to be manufactures of metal of which either of them was the component material of chief value. While the term "seaweeds * * * manufactured" was not the exact term there under consideration by the Supreme Court, the reasoning of that case, we think, is apt in deciding the issue at bar. The court said:

When the act speaks of "manufactures of metals," it obviously refers to manufactured articles in which metals form a component part. When we speak of manufactures of wood, of leather, or of iron, we refer to articles that have those substances respectively for their component parts, and not to articles in which they have lost their form entirely, and have become the chemical ingredients of new forms. The qualification which is added to the phrase "manufactures of metals"—namely, "manufactures of metals of which either of them" (that is, either of the *metals*) "is the component part of chief value"—corroborates this view.

In criticizing the classification of the collector, appellant has argued in substance that because the plant itself is a chemical compound is no reason for holding that the imported merchandise is such as is provided for in paragraph 5. The imported merchandise is not a chemical compound in the same broad sense that is suggested by appellant's contentions. According to the record, we think that alginic acid by a chemical process has been converted into a new chemical compound, though an impure one—sodium alginate. The fact that the imported merchandise contains substantially 50 per centum of impurities does not require that these impurities be charged with a duty since the rate in the paragraph is an ad valorem one and not a specific one.

There was some dispute among the testifying chemists as to whether or not the amount of alginic acid originally in the material could be determined by a chemical process. Much space in the record and the briefs is devoted to this question. We think it wholly immaterial since it is our view that the record as a whole discloses that both the physical and chemical structures of the plant were, by the treatment given it, changed so as to result in a new chemical compound, which, we think, is properly dutiable under said paragraph 5.

The judgment of the United States Customs Court is *affirmed*.